# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

D'SEAN HATTEN,

                Petitioner,               Case Number: 5:16-CV-10055
                                               HONORABLE JOHN CORBETT O'MEARA

v.

STEVEN RIVARD,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner D'Sean Hatten's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of five counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, five counts of felonious assault, MICH. COMP. LAWS § 750.82, one count of domestic violence, MICH. COMP. LAWS § 750.81 and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227(b). Petitioner raises seven claims for habeas corpus relief. Respondent, through the Attorney General's Office, has filed an answer in opposition arguing that three of Petitioner's claims are procedurally defaulted and that all of the claims lack merit. The Court finds no basis for habeas corpus relief and denies the petition.

## I. Background

Petitioner's convictions arise from two shootings in the City of Detroit in May

2013.  The Michigan Court of Appeals described the evidence adduced at trial as follows:

> This case arises from two drive-by shootings that occurred in Detroit, Michigan, on or around May 23, 2013.  Storm Brooks and defendant knew one another for approximately five years and together have a son, TH.  Storm moved in with her mother, Rhonda Brooks, and Rhonda's husband, Lee Walker, at 19791 Rutherford in March 2013 because she and defendant had an argument, defendant was arrested, and defendant kicked in her door after he was released from jail.  Rhonda testified that defendant had previously broken her windows and driven his vehicle rapidly up and down her street.  Walker testified that every time defendant and Storm had a problem, defendant would destroy Walker's property and shoot Walker's cars.
>
> According to Storm, she and defendant had an argument on the phone on May 23, 2013,[1] and defendant was served with a personal protection order (PPO) against him that day.  According to Storm, defendant came to the house at approximately 7:00 p.m. after he was served with the PPO.  He was yelling, but Storm could not understand him.
>
> Rhonda testified that defendant repeatedly called her on May 23, 2013.  At approximately 6:00 p.m., defendant called and said, "Everybody better get out.  I'm down on the corner watching."  Rhonda testified that defendant sounded angry. Later that night, after defendant had come by the house and yelled, defendant's mother called and asked if she could pick up TH, but Storm did not think that would be a good idea.  Rhonda heard defendant in the background threatening to come over and kick in the door. Rhonda called the police.
>
> Walker testified that defendant made threatening calls to Rhonda throughout the day on May 23, 2013, and at approximately 5:00 p.m. or 6:00 p.m., defendant drove by the house in his burgundy Trailblazer, and was yelling what he was going to do and that they should move out of the house.
>
> Walker testified that at approximately midnight that night, defendant called, said, "wakey, wakey," and told them that they should get out of the house.  According to Walker, defendant said that he was on his way.  At approximately 2:00 a.m. or 2:20 a.m., shots were fired at the house while Storm, TH, Rhonda, Walker, and Dushion Dennis, Rhonda's nephew, were present inside the house.  Walker heard three shots.  Storm grabbed TH and

pulled him to the floor. Shots were fired into the room that she was in and hit near the floor. Storm ran upstairs with TH, called defendant's mother, and asked her if she had seen defendant. Defendant's mother said that she had not seen him. Rhonda called 911.

After the first shots were fired, the lights were turned on in the house and the occupants were waiting for the police. Walker and Dennis were at the front door. Approximately 20 minutes after the first shooting, a second set of shots was fired. Walker saw defendant shooting out the window on the driver's side of a gray car, wearing a white T-shirt. Subsequently, after the police left, Walker picked up spent cartridges from inside the house and gave them to the prosecutor.

Dennis did not know defendant, but had seen him before. At approximately 2:00 a.m. on May 23, 2013, Dennis heard shots enter the house and saw a gray Avenger drive by the house. Dennis told everyone to get down. He did not see who was in the car the first time it passed. Dennis felt fragments from the window fall on his head. While they were waiting for the police, Dennis again saw a gray Avenger coming down the street and the shots started again. Dennis saw defendant on the driver's side of the vehicle, hanging out the window, wearing a white T-shirt, holding a weapon and firing shots. Dennis was unable to count the shots, as they were fired rapidly.

While talking to the police after the shootings, Storm saw defendant in a gray Avenger driving down the street and pointed it out. Defendant drives a burgundy Trailblazer, but his ex-girlfriend drove an Avenger.

Officer Raymond Buford of the Detroit Police Department responded to a drive-by shooting at 19791 Rutherford on May 23, 2013. As he was talking to the victims, a gray Avenger drove by and the victims indicated that it was the vehicle that had just done the shooting. He and his partner, Officer Philip Parham, searched the area for the vehicle. They located and stopped the vehicle. A young woman[2] was driving, defendant was in the front passenger's seat, and a man named Leon Pierce was also in the vehicle. The occupants were patted down, but no gun was found. The officers arrested defendant. Buford collected four shell casings near a bus stop on Seven Mile Road. Buford testified that one of the occupants of the house said that the passenger was the person shooting. Buford had been to the Rutherford address approximately eight months to a year earlier, after defendant had "shot the car up" that belonged to Storm or Walker.

[1]At one point, Storm testified that they argued on the morning of May 22, 2013.

[2]Nkari Mandisa, the driver, was originally charged along with defendant, but the charges against Mandisa were dismissed at the preliminary examination.

*People v. Hatten*, No. 319417, 2015 WL 966312, *1-2 (Mich. Ct. App. March 5, 2015).

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of five counts of assault with intent to murder, five counts of felonious assault, one count of domestic violence, and felony firearm. On November 19, 2013, Petitioner was sentenced to 280 to 560 months' imprisonment for each assault with intent to commit murder conviction, 12 to 48 months' imprisonment for each felonious assault conviction, 93 days' imprisonment for the domestic violence conviction, and two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these claims through counsel and in a pro per supplemental brief: (i) other acts evidence improperly admitted; (ii) insufficient evidence; (iii) sentencing guidelines improperly scored; (iv) ineffective assistance of trial counsel; (v) ineffective assistance of appellate counsel; (vi) double jeopardy violation; (vii) prosecutorial misconduct; and (viii) court costs and attorney fees improperly assessed. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences, but remanded to the trial court for further proceedings to establish a factual basis for the imposition of $600 of court costs. *Hatten,*

2015 WL 966312. The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Hatten*, 498 Mich. 873 (Mich. 2015).

Petitioner then filed the pending habeas petition. He raises these claims:

I.     Trial court abuse of discretion in allowing evidence of "other acts."

II.    Insufficient evidence to prove guilt of offense elements beyond a reasonable doubt.

III.   Violation of federal and state constitutional rights to the effective assistance of counsel.

IV.    Denial of effective assistance of counsel with constitutional appeal as of right.

V.     Violation of due process of law concerning multiple count convictions.

VI.    Constitutional due process violation.

VII.   Ineffective assistance of counsel

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must

ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

### A. Procedural Default

Respondent argues that several of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

## B. Admission of Other Acts Evidence (Claim I)

Petitioner argues that the trial court abused its discretion in admitting evidence of prior bad acts. Specifically, the court admitted testimony that Petitioner previously kicked-in Storm Brooks' front door, broke windows in Rhonda Brooks' home and shot at Lee Walker's vehicle. The Michigan Court of Appeals held that this testimony was properly admitted under state rules of evidence. *Hatten*, 2015 WL 966312, at *3-4.

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is

8

permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id*. at 513. Therefore, habeas relief is not available on this claim.

## C. Sufficiency of the Evidence (Claim II)

In his second habeas claim, Petitioner argues that the evidence was insufficient to support the intent element of the assault with intent to commit murder convictions. He argues that the two drive-by shooting incidents were virtually identical and both, therefore, should have supported only convictions for felonious assault.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson*, 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (Mich. 1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). "[T]his crime requires a specific intent to kill. Behavior that might otherwise establish malice in the context of murder, such as callous disregard for human life, is insufficient." *Hatten*, 2015 WL 966312 at *5 (citations omitted). The intent to kill may be proven by inference from circumstantial evidence. *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998).

The Michigan Court of Appeals cited the correct legal standard and held that sufficient evidence was presented to sustain Petitioner's assault with intent to commit murder convictions:

The parties do not dispute that the assault with intent to commit murder

convictions relate to the second shooting, which is consistent with the prosecutor's statements during closing argument. The evidence established that defendant drove by the home, for a second time, and fired multiple shots at the house occupied by five individuals. This occurred after defendant and Storm had argued, defendant had made threatening calls, defendant had visited the home, and defendant had told everyone they should get out of the house. The evidence also established that the lights in the home were turned on at the time of the second shooting and two individuals, Walker and Dennis, were standing at the front door. Those individuals both saw defendant shooting. From these facts, a rational trier of fact could infer that defendant knew the home was occupied when he fired shots at the home for the second time that night and that defendant intended to kill the occupants when he fired the second set of shots at the home. ... Thus, taken in the light most favorable to the prosecution, there was sufficient evidence of the intent element to support defendant's assault with intent to commit murder convictions.

*Hatten*, 2015 WL 966312 at *5.

In considering a sufficiency of the evidence claim on habeas review, this Court must not "'reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Nali v. Phillips*, 681 F.3d 837, 842 (6th Cir. 2012), quoting *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009). The Court presumes the correctness of the facts relied upon by the Michigan Court of Appeals; Petitioner has not rebutted that presumption. The evidence establishing the intent element of assault with intent to murder was more than sufficient to sustain the convictions. Habeas relief is denied on this claim.

### D. Ineffective Assistance of Trial Counsel Claim (Claims III & VII)

Petitioner's third and seventh claims for habeas corpus relief raise several allegations of ineffective assistance of counsel. Specifically, Petitioner argues that his

attorney was ineffective in failing to object to the scoring of offense variables, failing to request that a tape recording of a neighbor calling 911 be played for the jury, failing to challenge admission of prior bad acts evidence, failing to raise a double jeopardy claim, and failing to object to the prosecutor's use of tainted evidence.

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. Id. at 694.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. — , 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), quoting *Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions

were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, Petitioner claims that counsel was ineffective in failing to object to the scoring of certain offense variables. The Michigan Court of Appeals held that counsel was not ineffective in failing to object because none of the errors alleged by Petitioner would have altered Petitioner's minimum guidelines range. *Hatten*, 2015 WL 966312 at *10. Petitioner has failed to show that the state court's decision regarding the minimum guidelines range was incorrect. Therefore, he cannot show that he was prejudiced by counsel's failure to object.

Second, Petitioner argues that defense counsel should have moved for the jury to hear a 911 recording during which a neighbor reported shots were fired from a burgundy truck. Petitioner claims this would have substantiated his defense of mistaken identity. The Michigan Court of Appeals denied this claim finding no evidence that such a recording existed. *Id.* The state court noted that neither Rhonda nor Walker recalled asking any neighbors to call 911 nor was either aware of any neighbors calling 911. *Id.* On habeas review, Petitioner again fails to present any evidence to substantiate his claim that such a recording existed. In the absence of such proof, Petitioner cannot show that his attorney was ineffective in this regard.

Third, Petitioner argues that his attorney was ineffective in failing to "fully address" the use of prior bad acts evidence. The Michigan Court of Appeals denied this claim because the prior bad acts evidence was properly admitted and therefore, there was

no basis for objection. *Id.* "Because neither logic nor precedent indicate that objecting without cause amounts to effective advocacy," the petitioner cannot show that counsel was ineffective in failing to object to this instruction. *Bailey v. Smith*, 492 F. App'x 619, 627 (6th Cir. 2012).

Next, Petitioner argues that his trial attorney was ineffective in failing to object to violations of the Double Jeopardy Clause. As discussed below, Petitioner has not shown a violation of double jeopardy. Therefore, his defense counsel was not ineffective for failing to object on this basis.

Finally, Petitioner argues that his attorney was ineffective in failing to object to the admission of shell casings that Walker found inside the house. Walker testified that after the first shooing he found shell casings inside the home which he gave to police officer Buford. The shells were admitted into evidence. Buford testified that shell casings are typically found near where a gun is shot, unless they are moved. The Michigan Court of Appeals recognized that there was some disagreement about whether Walker found shell casings or bullet fragments inside the house. *Hatten*, 2015 WL 966312 at *16, n.9. To the extent that they were shell casings, the Michigan Court of Appeals held that, because the testimony at trial was that Petitioner shot at the house from a car, it was "unlikely or improbable, at best, that shell casings found inside the house could have been from the shootings by defendant." *Hatten*, 2015 WL 966312 at *16. Nevertheless, the state court found any error in the admission of the shell casings harmless given the substantial testimony against Petitioner and, consequently, found counsel's failure to object did not

prejudice Petitioner. *Id.* In light of the significant evidence presented incriminating Petitioner, the Court has no doubt that the Michigan Court of Appeals' finding that Petitioner was not prejudiced by admission of the shell casings was a reasonable one. Habeas relief is denied.

## E. Ineffective Assistance of Appellate Counsel Claim (Claim IV)

Petitioner claims that his appellate attorney was ineffective for failing to raise the claims raised in his *pro per* supplemental brief on appeal. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). None of the claims Petitioner argues his appellate attorney should have raised on appeal have been shown to have any merit. Therefore, counsel was not ineffective in failing to raise them.

## F. Double Jeopardy (Claim V)

Petitioner claims that his right to be free from double jeopardy was violated by his

convictions for both assault with intent to commit murder and felonious assault and by multiple convictions for each offense.  He also argues that counsel's failure to object rendered counsel ineffective.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person ... shall ... be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...." *Id.*  at 304.  "[T]he test established in *Blockburger* focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F.2d 355, 360-61 (6th Cir.1991) (internal citations and quotes omitted).  The Double Jeopardy Clause is not violated

merely because the same evidence is used to establish more than one statutory violation.

*See United States v. Dixon*, 509 U.S. 688, 696 (1993).

The Michigan Court of Appeals held that the assault with intent to commit murder and felonious assault convictions did not violated the Double Jeopardy Clause because they were based upon separate shooting incidents:

> In this case, defendant was convicted of assault with intent to commit murder and felonious assault based on separate shooting incidents. The assault with intent to commit murder convictions were based on the second shooting, while the felonious assault convictions were based on the first shooting. Because the first crime was complete before the second took place, there was no double jeopardy violation based on defendant's convictions of both assault with intent to commit murder and felonious assault. ...

> Defendant was also convicted of five counts each of assault with intent to commit murder and felonious assault. The separate counts related to each of the five victims who were present in the house during the shootings. This Court has stated: "Where crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that, therefore, where two persons are assaulted, there are two separate offenses." *People v. Lovett*, 90 Mich.App 169, 174; 283 N.W.2d 357 (1979). There were five assaults in each shooting because defendant's acts were an attempt with force or violence to do corporal harm to each occupant of the house. *People v. Brown*, 267 Mich.App 141, 147; 703 N.W.2d 230 (2005). Because there were five victims of each shooting, there was no double jeopardy violation when defendant was convicted of an offense relating to each victim.

*Hatten*, 2015 WL 966312 at *12-*13.

The Court finds that Petitioner's convictions do not violate the Double Jeopardy Clause. The determination by the Court of Appeals is supported by the evidence and legal authority discussed above. Petitioner was not subjected to multiple punishments for

17

a single criminal act, but was instead subjected to multiple punishments for multiple criminal acts. This does not offend the Double Jeopardy Clause. *See, e.g., United States v. Redditt*, 87 F. App'x 440, 447 (6th Cir. May 21, 2003) (the Double Jeopardy Clause is not violated where a defendant receives multiple punishments for committing separate criminal acts because he or she was not subjected to multiple sentences for the same offense). Further, because the Double Jeopardy Clause was not violated, trial counsel was not ineffective for failing to raise this issue.

### G. Failure to Produce Endorsed Witness (Claim VIII)

Finally, Petitioner argues that the prosecutor denied him his right to a fair trial by failing to produce an endorsed witness, police officer Philip Parham. Petitioner argues that Officer Parham's testimony was relevant because Officer Parham sent a picture of Petitioner to Rhonda Brooks for identification purposes.

The state-law requirement that prosecutors produce *res gestae* witnesses is outside the scope of federal habeas review. *Collier v. Lafler*, No. 09-1477, 2011 WL 1211465, *4 (6th Cir. March 30, 2011). *See also Atkins v. Foltz*, No. 87–1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam) ("[A]lthough Michigan law requires the production of all *res gestae* witnesses, [federal] court cannot hear state claims on petition for writ of habeas corpus . . ." (internal citation omitted)).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to...have compulsory process for obtaining witnesses in his favor...." U.S. Const. amend. VI. However, "more than mere absence of testimony is necessary to establish a violation of the right" to compulsory process. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). A violation of this right occurs "when the defendant was arbitrarily deprived of 'testimony [that] would have been relevant and material, and...vital to the defense.' " *Id.* (quoting *Washington v. Texas*, 388 U.S. 14, 16 (1967)). Petitioner "must at least make some plausible showing of how [the excluded] testimony would have been both material and favorable to his defense." *Id.*

The Michigan Court of Appeals rejected this claim, finding no prejudice to

Petitioner:

> [T]he failure to produce Parham or provide the missing witness instruction did not affect defendant's substantial rights. ... Defendant argues that Parham's testimony was necessary for the identification of defendant. According to defendant, because Buford testified that he did not send Rhonda a photograph of defendant by text message, it must have been Parham that did so. Defendant claims that the procedure was improper and prejudiced him because only one photograph was sent. At trial, Walker testified that someone sent a photograph of defendant to Storm after the incident. Buford testified that he did not take a photograph of defendant and send it to Storm's cell phone.

> Defendant's claim that Parham sent a photograph to Rhonda is purely speculative. Moreover, Parham's testimony was not necessary for the identification of defendant as the shooter because two victims, Walker and Dennis, saw defendant shooting at the house. Storm and Rhonda did not see the shooter and, thus, could not have identified the shooter by a photograph. In sum, defendant has not demonstrated that Parham's failure to testify prejudiced him. Further, an instruction that the jury should infer that Parham's testimony would have been unfavorable to the prosecution's case would not have affected the outcome of the trial given the eyewitness testimony identifying defendant as the shooter.

*Hatten*, 2015 WL 966312 at *14.

Petitioner fails to show how Officer Parham's testimony would have been helpful to the defense. As noted by the Michigan Court of Appeals, the evidence against Petitioner was substantial and there is no support for the conclusion that Officer Parham's testimony plausibly would have assisted his defense. Habeas relief is denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant."  A

COA may be issued "only if the applicant has made a substantial showing of the denial of

a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is

satisfied when a petitioner demonstrates "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*,

529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the

Court's conclusion that none of the claims in the habeas petition warrant relief.

Therefore, the Court denies a certificate of appealability.

### V.  Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a

certificate of appealability are **DENIED**.


                                        s/John Corbett O'Meara
                                        United States District Judge
Date:  December 6, 2017




I hereby certify that a copy of the foregoing document was served upon the parties
of record on this date, December 6, 2017, using the ECF system and/or ordinary mail.


                                        s/William Barkholz
                                        Case Manager